PASSAIC CONSOLIDATED WATER COMPANY, PROSECUTOR, v. BOARD OF PUBLIC UTILITY COMMISSIONERS OF NEW JERSEY, RESPONDENT.

Argued May 4, 1927—Decided November 11, 1927.

Public Utilities—Accounting—Uniform System—Defendant Had Value of Property Determined by Commission—It Then Set up in its Books as a Capital Account, an Amount Much Larger Than That Fixed by the Commission—This was Done Upon the Appraisement of an Independent Expert—No Attempt was Made to Use the Higher Figures as a Basis of Rate-making or for Security Issues—Held, That Commission's power to Establish Uniform Systems of Accounting Does Not Extend to an Arbitrary Decree That No Other System May be Employed, That it Cannot Compel a Rewriting of the Books so That No Other Capital Account Shall be Set up Than That Fixed by the Commission—It May be That Board May Require an Entry Referring to the Commission's Valuation, but It Cannot Prohibit the Setting up a Different Basis for Other Legitimate Purposes.

On writ of *certiorari*.

Before Justices TRENCHARD and KATZENBACH.

For the prosecutor, *Lindabury, Depue & Faulks* and *Osborne, Cornish & Scheck*.

For the respondent, *John W. Queen* and *Thomas Brown*.

PER CURIAM.

This case is before this court on a writ of *certiorari*. The writ brings up for review an order of the board of public utility commissioners dated January 7th, 1926, affecting the accounts of the Passaic Consolidated Water Company, the prosecutor. The contents of the order will later be particularly mentioned. In order to understand the situation with reference to the making of the order, it is necessary to review briefly certain matters relating to the prosecutor, which occurred prior to the making of the said order of January 7th, 1926.

The Passaic Consolidated Water Company is a consolidation of five companies known as the Acquackanonk Water Company, East Jersey Water Company, Kearny Water Company, Montclair Water Company and Passaic Water Company. The approval of this consolidation was made by the board of public utility commissioners on October 26th, 1923. On March 7th, 1923, the board had filed a decision allowing an increase in rates to the five companies. In the consideration of the rate question the board had fixed the value of the used and useful property of said companies at $11,500,000, of which $11,200,000 was designated as fixed capital (that is, plant) and $300,000 was working capital. The board in its approval of the consolidation directed that the books of the proscutor should be opened on the basis of consolidated book costs as shown in an exhibit referred to in said proceedings as *Exhibit P-2*. This exhibit fixed the valuations of plant and working capital at the figures hereinbefore mentioned.

The prosecutor opened its books on the basis of the consolidated book costs as of December 31st, 1922, continued to

the date of the merger, which was November 1st, 1923. In the early part of the year 1924 the prosecutor rendered a report to the board covering its operations from November 1st, 1923, to December 31st, 1923, on the basis indicated by the board's decision. In its annual report for the year ending December 31st, 1924, the prosecutor used a different set of figures. The amount of fixed capital as of December 31st, 1923, was entered as $23,170,398, and, after deducting depreciation reserve set up as a liability, it set up a net amount as fixed capital of $20,209,714. The prosecutor explained in its report that this higher figure was the result of an appraisement made by Nicholas S. Hill, Jr., an expert in the valuation of public utilities.

To these figures the board objected. The result of its objections was embodied in the order dated January 7th, 1926, which required the prosecutor (1) to reform and rewrite its books of account to conform with the board's decision of October 26th, 1923, approving the consolidation; (2) to modify its charges made for depreciation; (3) to rewrite its books of account on said basis and to submit to the board for approval an amended annual report; (4) that upon approval of such amended annual report being had, the prosecutor should set up no other or different basis of fixed capital than that so approved.

The writ of *certiorari* was allowed for the purpose of reviewing the validity of this order. The prosecutor contends that the issue is whether the board can require a utility to enter on its records and accounts as to the value of its fixed capital a sum arbitrarily determined by the board without hearing or proofs, and which sum is proven to be substantially less than the fair value of such assets. The board contends that the issue is whether the board can require a utility to keep its books, records and accounts according to the uniform system adopted by the board so as to afford an intelligent understanding of the conduct of the business of the utility.

The prosecutor alleges that it has in no way sought to use the higher valuation in connection with the rates charged or properly chargeable by it, or as the basis for the issuance of

securities, or in any other matter over which the board has jurisdiction or supervision; that it claims the right to enter its assets on its records at their fair value, and that it cannot be lawfully compelled to enter them at a substantially less value arbitrarily fixed by the board.

The board contends that under the provisions of the Utility act it has the power to make the order referred to, and that said order is lawfully within the powers of the board to enact.

The question presented seems to us to be somewhat academic. It nowhere appears in the record that the valuation placed upon its books by the prosecutor is sought to be used for any improper purpose. The board defends its order, not because the valuation which it has fixed for rate-making purposes is likely to be lost either in its records or the records of the prosecutor, but because it feels, as evidenced by the argument of its counsel, that the prosecutor seeks to contemn its power of authority.

In disposing of this question we will start out with the premises that the power of the board is that of regulation and not of asphyxiation. The right to regulate a utility does not destroy the right of private ownership. All the incidents of ownership, except in so far as it may be necessary to curtail them to properly exercise the power of regulation, remain with the corporation. If the order of the board is arbitrary and unreasonable and beyond the powers given to it by the statute, it is void. It seems to us that one of the rights of private ownership is the keeping of accounts not solely for the purpose of establishing a basis for fixing rates, but for such other matters as appertain to the ordinary business of a utility corporation. It owes to its stockholders certain rights that may require an entry upon its books of what it determines to be the fair value of its property. It must be recognized that when a board is fixing a basis for rates that it may perchance mistakenly undervalue the property of the utility or eliminate from the valuation elements which in the past have required the expenditure of considerable funds.

In ascertaining the income and excess profits upon which taxes have to be paid to the federal government, for example,

it is fair that the full value of the property should be used. To use it requires that such a valuation shall be entered on the books of account. In the event of the sale of any of the company's property for which it has no longer use there should be a record of the true value of such property. These illustrations might be multiplied. They are only used for the purpose of showing that in the conduct of the affairs of a corporation questions regarding its property will arise which require that there be entered upon its books other entries than that of the valuation fixed by the utility board for rate-making purposes.

It is well settled that when the bodies are created for the regulation of utility companies the presumption is that the power of regulation conferred does not extend beyond the express terms of the grant. *State* v. *Paterson,* 129 *S. W. Rep.* 892. In *Hackensack Water Co.* v. *Board of Public Utility Commissioners,* 96 *N. J. L.* 184, the Court of Errors and Appeals said: "It was the intent of the legislature that the exercise of these powers should be controlled not only by the statute itself but by the settled rules and principles of the common law."

The power which the statute gives to the board, and upon which the board relies to sustain its order in the present case, is found in section 17 of *Pamph. L.* 1911, *p.* 378. It is in these words:

"The board shall have power, after hearing, upon notice, to require every public utility as herein defined;

"(*d*) To keep its books, records and accounts so as to afford an intelligent understanding of the conduct of its business, and to that end to require every such public utility of the same class to adopt a uniform system of accounting. Such system shall conform, in so far as in the judgment of the board is practicable, to any system adopted or approved by the interstate commerce commission of the United States of America.

"(*e*) To furnish annually a detailed report of the finances and operations in such form and containing such matters as the board may from time to time by order prescribe.

NEW JERSEY MISCELLANEOUS REPORTS. 1083

Supreme Court—Passaic, &c., Water Co. v. Bd. Pub. Utility Com.

"(*f*) To carry, whenever in the judgment of the board it may reasonably be required, for the protection of stockholders, bondholders or creditors, a proper and adequate depreciation account in accordance with such rules, regulations and forms of account as the board may prescribe."

We are of the opinion that the power given to the board under these provisions of the statute is not sufficient to justify the order of January 7th, 1926. While there is ample authority to justify the provision that the prosecutor should adopt the uniform system of accounts prescribed by the board, yet we are of the opinion that such a provision does not justify the provision of the order requiring the rewriting of the books of the company as to its capital account, or that portion of the order which declares that no other or different basis of fixed capital shall be set up than that approved by the board. It may well be that the board could require an entry upon the books of a utility to the effect that on such and such a date the valuation for rate-making purposes was found by the board to be a specific amount, but the order in the present case goes beyond that and is a prohibition that there shall not be set up on the books of the company for any purpose whatsoever any different basis of fixed capital than that which has been approved by the board for rate-making purposes. This, we feel, transcends the power of the board.

The order is therefore set aside, with costs.